UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
BARRY BUXBAUM                    :
                                 :
                                 :
v.                               :  CIV. NO. 3:12CV117 (WWE)
                                 :
ST. VINCENT'S HEALTH             :
SERVICES, INC., ET AL            :
                                 :
                                 :
```

DISCOVERY RULING

Plaintiff brings this age discrimination case against
defendants, St. Vincent's Health Services, Inc., St. Vincent's
Medical Center, Inc., and St. Vincent's Special Needs Services,
Inc., pursuant to the Age Discrimination in Employment Act of
1969, 29 U.S.C. § 621, et seq. [Sec. Am. Compl., Doc. #31].
Plaintiff alleges that until October 16, 2009, he had been an
executive for nearly 30 years with defendant, St. Vincent's
Special Needs Center, and its predecessors.  [Id. at ¶13].
Plaintiff was allegedly discharged and/or forced to resign
because pornographic and sexually explicit materials were found
on his computer system. [Id. at ¶28].  Following his discharge,
plaintiff alleges that defendant, St. Vincent's Health Services,
hired his replacement who has "questionable qualifications" and
is younger than plaintiff.  [Id. at ¶ 32].  Plaintiff alleges
that the basis for his discharge and/or forced resignation is
pretext. [Id. at ¶33].

1

A discovery conference was held on December 17, 2012, to resolve outstanding discovery motions and other discovery disputes, including: defendants' motion to compel deposition of plaintiff **[Doc. #76]**; plaintiff's cross-motion to compel depositions of Susan Davis and Pamela Tarulli **[Doc. #79]**; plaintiff's motion to compel third-party Computer Science Corporation's response to subpoena duces tecum **[Doc. #82]**; and defendants' motion for protective order and sanctions **[Doc. #84].**[1]  The parties submitted an agenda in advance of the case management conference held on December 17, 2012. A follow-up telephone status conference was held on January 3, 2013.

1.  **Issue 1 of Discovery Agenda: Defendants' Motion to Compel Deposition of Plaintiff [Doc. #76] and Scheduling Deposition of Plaintiff's Wife**

At the case management conference, the plaintiff indicated no objection to defendants' taking the deposition of plaintiff's wife prior to the deposition of plaintiff.  The parties shall agree on a date certain for the deposition of plaintiff's wife. Should the parties fail to agree, they are directed to contact chambers to resolve the scheduling of this deposition.

Defendants filed a motion to compel the deposition of

---

[1] Defendants reported to the Court that the parties resolved the issues underlying the motion for protective order and sanctions [Doc. #84].  The parties also reported that the deposition of third-party witness Kevin Conway had been set on an agreed date. Accordingly, based upon the representations of the parties, defendants' motion for protective order and sanctions **[Doc. #84]** is **DENIED** as moot.

plaintiff **[Doc. #76]**.  During the follow up status conference, the plaintiff offered dates for the plaintiff's deposition: January 21, 22, 23, 24, and 25, 2013.  Defendants' counsel represented that she would confirm a date with her clients for plaintiff's deposition by the end of the day on January 3, 2013. The parties shall report back to the court via email, by January 11, 2013, as to the confirmed date for plaintiff's deposition.

Accordingly, in light of the parties' representations at the case management and follow up status conferences, defendants' motion to compel the deposition of plaintiff **[Doc. #76]** is **DENIED** as moot.

**2.** **Issue 2 of Discovery Agenda: Plaintiff's Cross-Motion to Compel Depositions of Susan Davis and Pamela Tarulli [Doc. #79]**

At the case management and status conferences, the parties discussed scheduling Susan Davis and Pamela Tarulli's depositions.  Davis is CEO of defendant, St. Vincent's Health Services.  Tarulli is a non-party witness who resides out of state, and is the former Vice President of Human Resources for defendant, St. Vincent's Health Services.  Plaintiff filed a cross-motion to compel the depositions of Davis and Tarulli. For the reasons that follow, the cross-motion to compel **[Doc. #79]** is **DENIED** as moot.

The parties agree to conduct the deposition of Davis on January 18, 2013.

The parties raised issues with both the date and location of Tarulli's deposition.  Defendants' counsel indicated at the case management conference that Tarulli lives in Pennsylvania, but works in Suffern, New York. Defendants requested that plaintiff conduct the deposition near Tarulli's place of work. The parties proposed conducting Tarulli's deposition in Stamford, Connecticut.  Following the case management conference, the Court received correspondence from the defendants stating that Tarulli works in Port Jervis, New York, and suffers from a heart condition which prevents her from traveling long distances.  According to the defendants, Tarulli would not be able to sit for a deposition in Stamford, Connecticut. At the follow up status conference, plaintiff reported that he subpoenaed Tarulli to appear for a deposition in Stamford, Connecticut on January 14, 2013.  Plaintiff now agrees to conduct the deposition of Tarulli in Port Jervis, New York.  Defendants furthermore agree to produce Tarulli for the deposition on January 14, 2013.

Tarulli shall appear for deposition on January 14, 2013, in Port Jervis, New York, unless good cause is shown why she cannot appear that day.  Defendants are furth directed to provide plaintiff with a letter from Tarulli's physician verifying her health condition(s).

Accordingly, in light of the representations of the

parties, plaintiff's cross-motion to compel **[Doc. #79]** is denied as moot.

**3.** <u>**Issue 3: Motion to Compel Computer Science Corporation's Responses to Subpoena Duces Tecum [Doc. #82]**</u>

**a. Background**

Non-party Computer Science Corporation ("CSC") is a third party vendor that was running defendants' day-to-day IT and computer operations. On November 7, 2012, plaintiff served CSC with a subpoena duces tecum seeking documents in advance of the deposition of CSC employee, Kevin Conway. The parties report that CSC has agreed to produce all documents requested by plaintiff's subpoena, except for certain emails between defendants' in-house counsel and CSC regarding efforts to preserve electronic data and the discovery of pornographic materials on plaintiff's computer. Defendants have provided the documents at issue for an *in camera review* along with a privilege log describing the nature of the documents.  At issue are twenty one (21) emails, which defendants argue are protected by the attorney-client privilege and/or the work product doctrine.

**b. Legal Standard**

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. <u>United States v.</u>

Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). The Court construes the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403 (1976); see In re Grand Jury Investigation, 399 F.3d 527, 531 (2d Cir. 2005). The burden of establishing the applicability of the privilege rests with the party invoking it. In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000); United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997).

The Court uses a three-pronged standard for determining the legitimacy of an attorney-client privilege claim.  A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice. In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007); Constr. Prods. Research, Inc., 73 F.3d at 473.  Again, the party asserting the privilege must establish the essential elements of the privilege.  Constr. Prods. Research, Inc., 73 F.3d at 473 (citing United States v. Adlman, 68 F.3d 1495, 1499 (2d Cir. 1995)).

Moreover, "[t]he common interest rule extends the attorney

client privilege to privileged communications revealed to a third party who shares a common legal goal with the party in possession of the original privilege.  The parties need not be actively involved in litigation; they must, however, demonstrate cooperation in formulating a common legal strategy.  The rule does not encompass a joint business strategy that merely happens to include as one of its elements a concern about litigation." TIFD III-E, Inc. v. U.S., 223 F.R.D. 47, 50 (D.Conn. 2005) (internal citations omitted); see also U.S. v. Kovel, 296 F.2d 918, 922 (2d Cir. 1961) ("the attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in useable form information obtained from the client."). "[C]ourts have extended the attorney-client privilege to communications made to investigators who have provided necessary assistance to attorneys[…]" Gucci Am., Inc. v. Guess?, Inc., 271 F.R.D. 58, 71 (S.D.N.Y. 2010) (string citation omitted). The standard in such circumstances is "whether the third-party agent is supervised directly by an attorney and whether the communications were intended to remain confidential." Id. at 72 (string citation omitted).

The work product protection, set forth in Federal Rule of Civil Procedure 26(b)(3)(A), provides that, "[o]rdinarily, a party may not discover documents and tangible things that are

prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." "The work-product rule shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need." Adlman, 68 F.3d at 1501 (citing Fed.R.Civ.P. 26(b)(3)). "The purpose of the doctrine is to establish a zone of privacy for strategic litigation planning and to prevent one party from piggybacking on the adversary's preparation." Id. (citing see United States v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case."); Hickman v. Taylor, 329 U.S. 495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947) (Jackson, J., concurring) (work product rule intended to insure that one side does not "perform its functions ... on wits borrowed from the adversary"); Restatement of the Law Governing Lawyers, Chap. 5 at 1 (Tent. Draft No. 6 1993) ("the doctrine seeks to preserve a zone of privacy in which a lawyer can work free from intrusion by opposing counsel")). However, "documents prepared in the ordinary course of business, or that otherwise would have been prepared absent the prospect of litigation, do not receive work

product protection." Gucci, Am., Inc., 271 F.R.D. at 74 (citing see U.S. v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998); see also William a. Gross Constr. Assoc., Inc. v. Am. Mfr. Mut. Ins. Co., 262 F.R.D. 354, 360 (S.D.N.Y. 2009).

As articulated in QBE Ins. Corp. v. Interstate Fire & Safety Equip. Co., Inc., No. 3:07cv1883(SRU), 2011 WL 692982, at *2 (D. Conn. Feb. 18, 2011),

> In determining whether the work-product doctrine applies, a court must undertake a two-step analysis. First, it must decide whether the sought "documents and tangible things" were "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed.R.Civ.P. 26(b)(3)(A). The party asserting work-product protection bears the burden of proof on that step. If the party asserting work-product protection meets its burden, then the court moves to the second step of analysis, which examines whether the evidence is nonetheless discoverable. That requires the party seeking discovery to show that the documents and other tangible things are otherwise discoverable under Rule 26(b)(1) and that the party "cannot, without undue hardship, obtain their substantial equivalent by other means." Id.

**c. Discussion**

After *in camera* review, and a careful consideration of the case law and CSC's role as defendants' "manager of day-to-day IT and computer operations", the Court finds as follows.

i. *Six (6) Emails Dated October 29, 2009*

Defendants assert an attorney-client and work product privilege for six (6) emails dated October 29, 2009 between

Pamela Miller, Esq., St. Vincent's Health Services' in-house counsel and director of risk management/legal services, and Andrew Struzik, an employee of CSC acting as St. Vincent's Medical Center Site Manager. These documents relate to preservation of plaintiff's and Robert Trojanowski's computers and home folders. The Court finds that these documents do not satisfy the third requirement of the attorney-client test, in that they were not made for the purpose of obtaining or providing legal advice.  Rather, the communications pertain to factual explanations of the preservation of plaintiff's and Trojanowski's computers. <u>See, e.g.</u>, <u>Urban Box Office Network, Inc. v. Interfase Managers, L.P.</u>, No. 01 Civ. 8854(LTS)(THK), 2006 WL 1004472, at *2 (S.D.N.Y. April 17, 2006) ("[T]he [attorney-client] privilege does not protect the client's knowledge of relevant facts, whether or not they were learned from his counsel, or facts learned by the attorney from independent sources.") (citing <u>Baptiste v. Cushman & Wakefield, Inc.</u>, No. 03 Civ. 2102(RCC)(THK), 2004 WL 330235, at *1 (S.D.N.Y. Feb. 20, 2004)).

Moreover, the Court finds that the work product privilege does not shield the discovery of these emails. These communications do not convey legal analysis, opinions, or mental processes. Simply, defendants have failed to show that such emails were prepared in anticipation of litigation, and not

10

generated "in the ordinary course of business, or [] otherwise
would have been prepared absent the prospect of litigation."
<u>Gucci, Am., Inc..</u>, 271 F.R.D. at 74 (citations omitted).

Accordingly, defendants are to produce these emails to
plaintiff by January 8, 2013.

### ii. *Emails Dated October 26, 2009 re: Alerting Staff to* `   *Trojanowski's Departure and Modifying Email Directories*

Defendants assert an attorney-client privilege for two
emails dated October 26, 2009.  The first email is time stamped
12:08 P.M. and is from Miller to Tarulli and Deborah Peck, St.
Vincent's Medical Center's Human Resources Director.  The second
email is time stamped 2:57 P.M. and is from Tarulli to Miller
and Peck. John Glecker, St. Vincent's Health Services' CFO, is
copied on the email.  The Court finds that these documents do
not satisfy the third requirement of the attorney-client test,
in that they were not made for the purpose of obtaining or
providing legal advice.

Defendants also assert an attorney-client and work product
privilege for another dated October 26, 2009.  This email is
time stamped 2:57 P.M., and is from Tarulli forwarding her prior
email to Thornquist and Struzik.  Miller and Glecker are both
copied on this email. For the same reasons stated above, this
email does not satisfy the third requirement of the attorney-
client test.  Not only is the email not directly between counsel

11

and client, it was not made for the purpose of obtaining or
providing legal advice.  "A document is not privileged merely
because it was sent or received between an attorney and the
client.  The document must contain confidential communication
relating to legal advice."  Sokol v. Wyeth, Inc., No. 07 Civ.
8442(SHS)(KNF), 2008 WL 3166662, at *5 (S.D.N.Y. Aug. 4, 2008)
(quoting Dep't of Econ Dev. v. Arthur Anderson & Co., 139 F.R.D.
295, 399 (S.D.N.Y. 1991)).  The Court also finds that this email
is not shielded by work product protection as it does not convey
any substantive information.

Accordingly, defendants shall provide defendants with
copies of these three (3) emails by January 8, 2013.

### iii. *Emails Dated October 26, 2009 re: Access to Plaintiff and Trojanowski Computers*

Defendants assert an attorney-client and work product
privilege for three emails dated October 26, 2009.  The first
email is time stamped 3:08 P.M., and is from Thornquist to
Tarulli and Struzik.  Miller and Glecker are copied on this
email.  The second email is time stamped 3:10 P.M., and is from
Miller to Thornquist, Tarulli, and Struzik.  Glecker and John
Newman, Esq., St. Vincent's Medical Center's general counsel,
are copied on this email.  The third email is time stamped 3:43
P.M., and is from Tarulli to Miller, Thornquist, and Struzik.
Glecker and Newman are also copied on this email. By and large,

these emails do not satisfy the attorney-client test as the communications do not appear to have been made to obtain, or convey, legal advice.  These emails also are not shielded by work product protection, as they do not convey legal analysis, opinions, or mental processes. Simply, defendants have failed to show that such emails were prepared in anticipation of litigation, and not generated "in the ordinary course of business, or [] otherwise would have been prepared absent the prospect of litigation." Gucci, Am., Inc.., 271 F.R.D. at 74 (citations omitted).

Accordingly, defendants shall provide defendants with copies of these three (3) emails by January 8, 2013.

### iv. *Emails Dated October 26, 2009 re: Modifying Email Directories*

Defendants again assert an attorney-client and work product privilege for three emails dated October 26, 2009.  The first email is time stamped 4:30 P.M., and is from Struzik to Miller. Thornquist, Newman, Gleckler and Tarulli are copied on the email.  The second email is time stamped 4:31 P.M., and is from Tarulli to Struzik and Miller. Thornquist, Newman and Gleckler are copied on this email.  The final email is time stamped 4:39 P.M. and is from Thornquist to Struzik and Miller. Newman, Gleckler and Tarulli are copied on this email.

These emails again do not satisfy the third prong of the

13

attorney client test in that the communications were not made for the purposes of obtaining or receiving legal advice. Rather, the emails simply relay facts concerning the modification of email directories. As such, they are not privileged. See, e.g., Urban Box Office Network, 2006 WL 1004472, at *2, supra.

Additionally, the subject emails are not shielded by work product protection. The emails do not convey legal analysis or opinions. Simply, defendants have failed to show that such emails were prepared in anticipation of litigation, and not generated "in the ordinary course of business, or [] otherwise would have been prepared absent the prospect of litigation." Gucci, Am., Inc.., 271 F.R.D. at 74 (citations omitted).

Accordingly, defendants shall provide defendants with copies of these three (3) emails by January 8, 2013.

v. *Five (5) Emails Dated November 10, 2009*[2]

Defendants next assert an attorney-client and work product privilege for five (5) emails dated November 10, 2009 concerning a litigation hold on plaintiff and Trojanowski's email and documents.

The first two (2) of these emails are between Miller and

---

[2] The privilege log indicates that there are five (5) emails dated November 10, 2009. However, a review of the documents indicate that two of these emails are actually dated November 11, 2009.

Thornquist.[3]   The Court finds these email are protected by the
attorney-client privilege as they are a confidential
communication between client and counsel where legal advice is
sought and provided.   Having determined that the attorney-client
privilege applies, the Court need not address the issue of work
product privilege.

The remaining three (3) emails are between Miller,
Thornquist, and Struzik.[4] The first of the emails is time stamped
12:42 P.M., and is from Thornquist to Miller. Struzik is copied
on the email. The second email is dated November 11, 2009 and
time stamped 8:58 A.M.  This email is from Struzik to
Thornquist.  Miller is copied on this email.  These emails are
not protected by the attorney-client privilege as they fail to
meet the third prong of the attorney-client test.  No legal
opinion or advice is sought or given.  Moreover, the defendants
have failed to show that such emails were prepared in
anticipation of litigation, and not generated "in the ordinary
course of business, or [] otherwise would have been prepared
absent the prospect of litigation."  <u>Gucci, Am., Inc.,</u>, 271
F.R.D. at 74 (citations omitted).

---

3 For ease of reference, the emails referenced in this paragraph
are time stamped 12:36 P.M. and 12:40 P.M., respectively. Susan
H. Mack is also copied on the emails.  She appears to have been
an employee with one of the defendants at the time this email
was sent.
4 Susan H. Mack is also copied on the emails referenced in this
paragraph.

The third email is also dated November 11, 2009 and is time stamped 10:01 A.M.  This email is sent by Miller to Struzik and Thornquist.  This email is protected by the attorney client privilege, as it conveys legal advice from Miller to Thornquist and Struzik.  The presence of Struzik does not destroy the privilege of this communication, as his assistance was indispensable to Miller in gathering information during the course of the investigation regarding plaintiff. Sokol, 2008 WL 3166662, at *5 (quoting Kovel, 296 F.2d at 921) ("The client's or the attorney's communications with the persons who act as the attorney's agents and whose assistance is indispensible to the attorney's work, are protected by the attorney-client privilege.").

Accordingly, defendants shall produce the following emails to plaintiff by January 8, 2013: email dated November 10, 2009, time stamped 12:24 P.M., and email dated November 11, 2009, time stamped 8:58 A.M.

vi. *Email Dated February 15, 2010*

Defendants assert an attorney-client and work product privilege for an email, with an attachment, dated February 15, 2010.  This email is sent from Miller to Struzik and concerns plaintiff's requested litigation hold on electronic data. The Court finds that these documents do not satisfy the third requirement of the attorney-client test, in that they were not

made for the purpose of obtaining or providing legal advice. However, the Court does find that this email is shielded by the work product doctrine, as it was prepared in anticipation of litigation and reflects some of Miller's mental processes. The Court also finds that plaintiff has failed to meet his burden that he cannot, without undue hardship, obtain the substantial equivalent of information by other means. In fact, plaintiff has taken the deposition of the recipient of this email. As such, this email is protected by the work product doctrine.

**4.  Issue 4 of Discovery Agenda: Imaging of the Trojanowski hard drive**

At the case management conference, plaintiff requested an exact copy of the Trojanowski[5] hard drive in defendants' possession. Based upon the representations of the parties, defendants' expert shall make a second copy of the Trojanowski hard drive and provide it plaintiff.[6] The parties agree that the issue of the cost of producing such copy shall be resolved at a later date. However, the parties are encouraged to amicably resolve this issue. If the parties are unable to

---

[5] Robert Trojanowski is the former CFO of defendant, St. Vincent's Special Needs Center. Trojanowski was terminated at the same time as plaintiff.

[6] At the follow up status conference, defendants reported that their expert sent a copy of the Trojanowski hard drive to plaintiff's expert on January 2, 2013 via overnight mail. The parties shall contact the Court if a copy of the Trojanowski hard drive was not received by plaintiff's expert on January 3, 2013.

agree, they are directed to contact chambers for a telephone conference to resolve this issue.

5. **Issue 5 of Discovery Agenda: Plaintiff's Second Request for Production – Box of Desk Calendars and Office Contents**

At the case management conference, plaintiff raised an issue as to whether defendants had fully complied with his second request for production dated October 25, 2012, which seeks a box of plaintiff's desk calendars and office contents. Defendants agree to provide plaintiff with an inspection date to examine the box in question.  Based upon the representations of the parties, the parties shall agree within ten (10) days from the date of this Order on an inspection date.

6. **Issue 6 of Discovery Agenda: Defendants' Request for Production of Document Identified During Third-Party Deposition on November 26, 2012**

During the deposition of a third-party witness, Mr. Rudner, defendants learned that plaintiff received a list of plaintiff's appointments to cross reference with dates of when pornographic materials were allegedly placed on defendants' server. Defendants requested a copy of this information from plaintiff's counsel.  There is some disagreement as to whether plaintiff's counsel agreed to produce this document(s).  Based upon the representations of counsel during the case management conference, plaintiff shall confirm whether the requested document(s) will be produced to defendants.  The parties are

directed to report back to the court via email by January 11, 2013 as to whether plaintiff will produce this document(s).

7.   **CONCLUSION**

In conclusion, the following motions are **DENIED** as moot: defendants' motion to compel deposition of plaintiff **[Doc. #76]**; plaintiff's cross-motion to compel depositions of Susan Davis and Pamela Tarulli **[Doc. #79]**; and defendants' motion for protective order and sanctions **[Doc. #84]**.

Plaintiff's motion to compel third-party Computer Science Corporation's response to subpoena duces tecum **[Doc. #82]** is **DENIED in part** and **GRANTED in part**, as set forth above.

The parties' letters dated December 18 and 19, 2012 will be docketed by the Clerk.

This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 7th day of January 2013.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE